# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 28, 2011

No. 10-40278

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSHUA CALHOUN,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
7:09–CR–1159

Before GARWOOD, SMITH, and STEWART, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Joshua Calhoun ("Calhoun") appeals the district court's calculation of his sentence after he pled guilty to high speed flight from a border checkpoint. We VACATE and REMAND for resentencing.

## I.

United States Border Patrol ("Border Patrol") agents stopped Calhoun at a Texas port of entry. Calhoun looked suspicious, which prompted Border Patrol agents to check his vehicle's license plate. This check alerted the Border Patrol

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40278

agents to consider Calhoun "armed and dangerous." Thereafter a second agent, Cynthia Sandoval, approached Calhoun's truck and asked that he step out of the vehicle. When Calhoun refused, Sandoval attempted to open the driver's side door, but Calhoun started the ignition and began driving off. Sandoval ran alongside the truck for about 30 feet, simultaneously reaching into the truck to turn off the ignition and trying to hit Calhoun with her baton. Calhoun was "shoving" or "brushing" or "pushing" the agent's arms away. The agent finally let go of the truck and Calhoun sped off.

Calhoun was eventually apprehended, after which he pled guilty to flight from a checkpoint in violation of 18 U.S.C. § 758. The Pre Sentence Report ("PSR") stated that the applicable sentencing guideline was United States Sentencing Guidelines ("Guidelines") § 2A2.4, for obstructing or impeding officers (base offense level 10), increased by 3 levels because the offense involved physical contact and by 2 levels because the victim sustained bodily injury. The PSR noted, however, that § 2A2.4(c)(1) directed a sentencing court to apply § 2A2.2 "[i]f the conduct constituted aggravated assault." The PSR recommended that the court apply § 2A2.2 because Calhoun committed a felony assault with an intent to commit another felony (flight from a checkpoint).

At his sentencing hearing, Calhoun objected to the aggravated assault cross-reference, under § 2A2.2. Calhoun argued that the offense of conviction could not be the "other felony" contemplated by § 2A2.2 because the offense of conviction led to the cross-reference in the first place, therefore the other felony must be separate from the offense of conviction. Calhoun also argued that if the court accepted the PSR's interpretation, it would render the enhancement under § 2A2.4 for bodily injury a nullity, because any time a person impeded an officer and caused bodily injury, it would always be aggravated assault.

The district court disagreed with Calhoun. The district court noted that the defendant need not cause the bodily injury to trigger the enhancement.

2

No. 10-40278

Instead, the victim must merely have "sustained bodily injury." The court reasoned the enhancement is not a nullity and the cross-reference is applicable. Calhoun was sentenced under § 2A2.2 to a term of fifty-four months' imprisonment and three years of supervised release. This timely appeal followed.

## II.

### A.

"We review the district court's application and interpretation of the sentencing guidelines *de novo* and its factual findings for clear error." *United States v. Gonzalez-Terrazas*, 529 F.3d 293, 296 (5th Cir. 2008). Specifically, we review the application of cross-reference provisions de novo. *United States v. Hicks*, 389 F.3d 514, 529 (5th Cir. 2004). If the district court did not make the necessary factual findings, we must conduct a de novo review of those facts. *See United States v. Castaneda*, 162 F.3d 832, 836 & n.24 (5th Cir. 1998).

### B.

Calhoun pled guilty to 18 U.S.C. § 758, which proscribes flight from a checkpoint operated by a federal law enforcement agency. The circumstances involving his flight and subsequent arrest, including the role played by Sandoval, implicate two provisions of the Guidelines. Section 2A2.4 is entitled "Obstructing or Impeding Officers" and lists as its specific offense characteristics: "if the offense involved physical contact; or dangerous weapon;" or if "the victim sustained bodily injury." U.S.S.G § 2A2.4b. Section 2A2.4 also includes a cross-reference which instructs the district court to apply § 2A2.2 if "the conduct constituted aggravated assault." U.S.S.G § 2A2.4C. The commentary to § 2A2.2 defines aggravated assault as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." U.S.S.G § 2A2.2 n.1.

3

No. 10-40278

## C.

Calhoun argues that the district court erred by sentencing him under the aggravated assault Guideline pursuant to the cross-reference contained in § 2A2.4C. He contends that the facts of his case do not support a finding that his conduct falls "within the ambit" of the aggravated assault Guideline because the "intent to commit another felony" referenced in the application of the guideline was the underlying offense for which he was convicted: flight from a checkpoint. The Government, meanwhile, argues that the district court neither abused its discretion nor erred in its application of the cross-reference. We agree with Calhoun.

There is no evidence that Calhoun intended to commit an assault on Sandoval. *United States v. Feola*, 420 U.S. 671, 684 (1975). This dissonance is amplified by our review of the PSR against our review of the sentencing hearing at the district court. The district court "adopt[ed] the factual findings contained within the [PSR]," which states that "it does not appear that there is sufficient evidence to suggest that the defendant intended to commit bodily injury." Yet, this finding contradicts the district court's legal conclusion that Calhoun assaulted the agent.

To salvage its argument, the Government relies on our unpublished decision in *United States v. Ortegon*, 45 F. App'x 318 (5th Cir. 2002). Because we conclude *Ortegon* is unpersuasive and distinguishable from the facts at hand, the Government's reliance on it is misplaced. In *Ortegon*, a panel of this court considered a defendant who drove his car from Mexico through a primary inspection lane at the American border checkpoint at El Paso, Texas. *Id.* Defendant Ortegon tried to drive off when checkpoint personnel asked him to give them his keys. As Ortegon fled the checkpoint, a Border Patrol agent jumped into the passenger seat to avoid being struck by the car. Once inside, the officer attempted to turn off the ignition, only to be met by repeated punches by

4

Ortegon. Ortegon's vehicle was eventually stopped by another officer, and Ortegon was arrested. A search of his vehicle yielded 45.15 kilograms of marijuana. Ortegon pled guilty to assaulting a federal officer by inflicting bodily injury, importing marijuana, and possession of marijuana with intent to distribute.

While the similarity of this case to *Ortegon* is evident—both involve attempts to flee a checkpoint—the congruence ends there. In *Ortegon*, the officer was halfway inside the defendant's vehicle when the attempted flight occurred and the defendant affirmatively punched the checkpoint officer. Here, the officer ran alongside the vehicle in an attempt to stop the vehicle. Furthermore, there is no allegation that Calhoun ever punched—or attempted to punch—Sandoval, as was the case in *Ortegon*. Moreover, in *Ortegon*, the defendant attempted to drive his vehicle into the way of the checkpoint officer.

Here, Sandoval ran alongside the vehicle and relented only when she determined that she would be unable to keep pace with Calhoun's car. Also, Sandoval's injuries were not directly from Calhoun's hand, as was the case in *Ortegon*. Sandoval testified that she sustained scratches and bruises on her arm from the truck, and not Calhoun directly. Stated differently, *Ortegon* is distinguishable from this case.

Calhoun's conduct is more accurately described as physical contact, for which § 2A2.4 supplies an enhancement, and not as an assault, for which § 2A2.2 supplies a higher base offense level. This court has stated that "although there is some overlap between § 2A2.2 and § 2A2.4, the logical conclusion is that § 2A2.4 is meant to apply to possession of weapons and verbal threats, while § 2A2.2 is meant to apply to something more." *United States v. Hooker* 997 F.2d 67, 75 (5th Cir. 1993). In addition to possessing a weapon and a verbal threat, § 2A2.4 must also cover some form of physical contact that is

No. 10-40278

less than a forcible assault,[1] otherwise the enhancement for physical conduct would be a nullity.  Calhoun's conduct does not look like "something more" than possessing a weapon, a threat, or physical contact: He sped away from a checkpoint while an agent held on to the truck for about 30 feet.  He did not physically attack her, and testified that he did not intend to harm her.  This conclusion is underscored by the lack of a finding by the district court that Calhoun used his truck as a dangerous weapon—i.e., with intent to injure Sandoval.  Considering all of the above on de novo review, we hold that Calhoun did not commit an assault, and thus the district court erred in applying § 2A2.2.

## III.

For the foregoing reasons, we VACATE the district court's judgment of sentence and REMAND for resentencing.

---

[1] *See United States v. Rue,* 988 F.2d 94, 96 (10th Cir. 1993) ("There exists no conflict or tension between U.S.S.G. §§ 2A2.2 and 2A2.4. Section 2A2.4 is applicable if the defendant merely obstructs or impedes an officer.  If there was physical contact or if the use of a dangerous weapon was threatened while obstructing or impeding an officer, then the base offense level is increased from six to nine under § 2A2.4.  In contrast, § 2A2.2 should be utilized if a dangerous weapon was in fact used with intent to do a bodily harm.")